Good afternoon, everyone. The panel has before it today a total of five cases. Two of them are being submitted on the briefs without oral argument later today, namely Appeal No. 06-3173, Bush v. Office of Personnel Management, and Appeal No. 06-3355, Hunter v. Department of Air Force. The first case on the oral argument list is Adair v. United States, Appeal No. 06-5077. Mr. Harrell? Yes, Your Honor. Welcome. Good afternoon. Please proceed. Thank you, Your Honor. Am I correct that you're not reserving any time for rebuttal? That's correct. Very well. If I stop maybe a couple of minutes, may I ask the Court then to put some time on it? Yes, you may. Thank you. Please proceed. Please, the Court. I'm Wallace Harrell from Brunswick, Georgia. Mr. Roberts and I represent 220 plaintiffs who filed suit in the United States Court of Federal Claims and who are or were employees of the Federal Correctional Institute in Jessup, Georgia. Mr. Harrell, you should assume that we've read the briefs and have a pretty good command of the facts and a sense of what the issues are and focus the limited time we have on your court contentions here before us. Thank you, Your Honor. Your Honor, let me put this, what's already up here for me. We prepared this chart, and I think it would be helpful to the Court and to us too. These are the elements of hazard pay that we contend are set forth in the statute and in the regulation, 5 U.S.C., 5 United States Code, 55, 45. And the first three of these are set forth in the regulation, and number four in the statute itself. And I'd like to discuss with the Court whether or not our contention is correct. We think it is, that these employees come within the regulation and within the statute that authorizes the differential in pay. And so the first one I'd like to talk about is, number one, is whether or not the employee works with an enclosed proximity to a toxic chemical. Mr. Harrell, is it not the case that the dismissal by the trial judge was based simply on the allegations in the complaint, right? Yes. That's all she had before. That's right. And the governing rule would be that she would have to take those allegations as true for purposes of 12B1 or 12B6 dismissal motion, which is what the government presented. That's correct. So it seems like what we need to compare is what you alleged with the required elements to make out a case under either of the two statutes. Well, we allege, number one, under the first statute, under 5545, that the employees do come and do work in proximity to a toxic chemical. We contend that secondhand smoke is a toxic chemical and that they have been required to work in close proximity to that. We allege. Let's assume the proximity isn't in serious dispute. But I read the trial judge's decision as effectively saying that while cigarette smoke may contain some toxins, that it is not a toxic chemical in the sense the word or phrase is used in the statute or the regulations. So I would think if she's right about that, then this dismissal would have been proper because it would have been a fatal failure to meet a particular element. What's your basis of saying that dispersed or semi-dispersed cigarette smoke is a, quote, toxic chemical within the meaning of the statute or regulation? Well, we allege, and I think we can clearly prove that secondhand smoke has in it toxic chemicals. Well, the government admits that. They do. But that doesn't make it a toxic chemical. Obviously, a big jar full of sulfuric acid, that's a toxic chemical. A big tank full of chlorine. But if you're exposed to it, it's a problem. No question about that. What everyone knows, has known for decades, that cigarette smoking is a serious health problem. It creates a whole multiplicity of health degradation. No question about that. The government doesn't dispute that. They just say it's outside the scope of what the Congress did here. Well, is it? I mean, that's the question. And it seems to us that— You've got the language in both of these statutes, the unusual, which seems to be pretty central here. It is central, yeah. And if I understand it correctly, both of these statutes were amended to add asbestos. Correct. That's correct. The briefs mention that, but they don't give much background as to what happened. Why was that category of asbestos added, and how has it been interpreted? Well, it's my understanding that it was added as a result of the asbestos crisis that the court systems in the whole United States had in dealing with asbestos cases. And so some category was added specifically to help deal with that issue. It's my general understanding about that. Well, what kind of asbestos exposure were they concerned with? Were they concerned with people working in buildings with asbestos insulation? Were they concerned about workers who were carrying out asbestos? What was the concern here? Because there does seem to be a certain similarity in some ways between some asbestos situations and the cigarette smoke situations. You would think so, Your Honor. If they were concerned with the fact that people working in buildings had asbestos in it, then that would be similar to working in a place where cigarette smoke was, as opposed to working with asbestos or removing asbestos. Working with it in some way. Okay, so we agree on what's pertinent here. What's the history? What does it show the concern was? Well, I really just don't know for sure the answer to that question. It seems to me that it's our contention in this case that it's comparable to working in a place. But how does that help you? I suppose it's highly comparable. Doesn't that work against you? Because the Congress in, I think it was 2003, elected to add asbestos by name, but not to add secondhand smoke, or ETS as I guess you're referring to it. So doesn't that suggest that smoke remains outside the coverage of the statute? Well, it seems to us the response that we make to that, if you please, Your Honor, is that these are toxic chemicals within secondhand smoke, and they've always been covered. Carbon monoxide is in secondhand smoke. It's always been covered. It's a toxic chemical. It's in secondhand smoke. Arsenic is in secondhand smoke. It's always been covered. It's a poison. It's hard to be confident you're right in talking about carbon monoxide. As I understand it, every automobile engine emits, among other things, carbon monoxide. So when I walk down the street, I'm being exposed to carbon monoxide. Now, certainly I don't qualify under the statute for any kind of extra pay as a federal employee because I'm exposed to autofumes. But it's been proven that if you expose to secondhand smoke, you can contract lung cancer. You can have a heart attack. Sure. If you're exposed to enough carbon monoxide, you die. Yes, but people are being exposed to secondhand smoke and are contracting lung cancer from it. It's been proven. The government claims that. The government is suing the tobacco companies for the secondhand smoke. But when you say carbon monoxide is covered, what I'm suggesting to you is maybe in some circumstances. Maybe somebody who works in a government lab with concentrated pure carbon monoxide might be covered. But not every government employee who has any degree of exposure to fumes that include carbon monoxide would be covered. You'd have to agree with that, wouldn't you? I would agree with that, John. But secondhand smoke is a special category. To carry Chief Judge Michel's example one step further, what about government workers in garages where there's a high concentration of automobile fumes? They're working there all the time. Would they be covered by this? Yes, sir. They would be. They would be. Has that ever come up? Clearly covered. Clearly covered. Well, there probably wouldn't be because as the neighborhood service station would illustrate, there are exhaust fans that take the exhaust directly out of the back of the car and vent it outside the building in which the mechanics are working on the cars. The regulation talks about that very funny for the physical hardship of duty. The physical hardship category talks about the hardship of the work of duty. But if you take Judge Dyke's hypothetical of a garage, wouldn't it be part of your burden of proof, or at least pleading at the stage we're at, that the garage was not vented? Because you're not within the statute if the garage is mechanically vented. The problem is that with a cigarette smoke, you can't vent it. You cannot solve the problem. That's what the government contends itself, that you cannot protect yourself from cigarette smoke. Sure you can. You can have ventilation in the buildings, in the rooms. You can have open windows. You can limit areas where people smoke. You can circulate the air. I mean, there are lots of mechanical things you could do. That's not what EPA says. It says you cannot put people in a room somewhere and say smoke in that room, and people are still problematic from that secondhand smoke. That's what the government says. Well, when you say the government, you're not talking about something in your complaint. You're talking about extraneous reports that aren't even in the record in this case. But we plead it. We plead that. And that's part of our allegation. That's got to be taken as true as far as motion to dismiss. We plead that in our complaint. We set forth the allegations, the claims that the government makes. Did you plead that there was no ventilation? Yes, we pled that. I didn't see that. I didn't study it as closely as I might have, perhaps. I think for sure that we pled that the smoking, that these people, these inmates were allowed to smoke, and that no protective device is available to protect the employees from that secondhand smoke. Put them in the barracks where they smoke. The people, the guards, the people that work there are still affected by that secondhand smoke. It's a hazardous condition. It's got hazardous chemicals in it. And it's always had hazardous chemicals in it. Sure, but concentration makes a big difference. We're all exposed to innumerable hazard chemicals in minute degrees every day. And nobody gets excited about that. There are no laws entitling people to any form of compensation if the concentration is low enough. It seems to me it's part of your pleading burden to show that the concentration is unusually high, as Judge Dyke's earlier question suggested. Unusual is a word right in the statute. Well, we claim that it comes within the statute, that it is a hazardous condition. And what we've got to show, what we've got to show is that. Isn't that pleading a conclusion rather than a fact? I think, well. That it comes within the statute. That's just circular. You've got to plead facts. And we have to accept the allegations. But you've got to plead facts, I would think, that make out every element of the case. And one element of the case is, I would think, that the concentration is unusually high and therefore is a serious health threat and be within the zone of what Congress is trying to compensate people for. Yes. Are there any other examples in these regulations that deal with substances that are common, unusual in the ambient environment in which people are working? They all seem to be directed to unusual events rather than things which are part of the day-to-day environment. Am I mistaken about that? No, you're not. That's what the statute itself says. Number four says that the physical hardship or hazard is not usually involved in carrying out the duties of the employee's job. And the point that we make there is that secondhand smoke is unusual in this day and time to be in an employment situation. But not in prisons. Yes, sir, it is in prisons. They don't have it in this prison now since we filed this lawsuit. No, but prisons are exempt from the executive order. So what's the proof that it's unusual in prisons to be exposed to secondhand smoke? Well, the warden himself said that he was now, by stopping the inmates from smoking there, that he was now complying with that order from the president. Go ahead. One aspect that I was a little disappointed in, in both briefs, that no one really mentioned the fact that the Supreme Court has ruled that this is an Eighth Amendment type of protection for prisoners. And that was in Helling v. McKinley in 1993 where the Supreme Court has indicated that prisoners are protected from secondhand smoke. Now, if you protect the prisoners under the Eighth Amendment, why should not the employees of that prison be also protected from secondhand smoke? Well, we should have mentioned that, Your Honor. There's a whole series of cases that go through that, including one case where the dismissal on the pleadings was reversed and sent back for trial specifically on that particular point. And it was reversing the dismissal when an inmate alleged that he was forced to live and work in environments filled with tobacco smoke. None of those cases were mentioned by either side. I don't quite understand, because I think they're not related, obviously, because of the Eighth Amendment. You're talking about statutory interpretation, but they are very similar. Yes, I think we should. May we file a supplemental brief on that, Your Honor? We'll withhold on that. Let's hear from the government. You've had your 15 minutes, and we appreciate your arguments and clarifications. Thank you. Mr. Mitchell? Before you launch into any prepared remarks, Counsel, it is not fair to say that on both statutes, Judge Hewitt relied heavily, not exclusively, but heavily, on the fact that in 2003, asbestos was added, and smoke wasn't, and then she inferred from that that Congress didn't intend to cover smoke in this statute. Yes, Your Honor. Now, if that is major reliance by her as to both statutes, then wouldn't it be very important to try to explore what evidence could be excavated of congressional intent by looking at the bill that added asbestos and how that came about? Yes, Your Honor. What the hearings covered, what the committee report covered, what any conference report covered, but I didn't see any of that in the government's brief. There wasn't. The Court is absolutely right. We did not brief that issue, and we can provide a supplemental brief. Did you not research the issue? We researched the issue, but primarily we looked at the statute as Congress telling OPM to define what are the unusual physical hardships or hazards that a federal employee could face. That may be, but the decision that's being appealed is Judge Hewitt's decision, and it relied on what it relied on, and it seems like if you're defending that judgment, unless you have a better rationale that could be substituted, that you better provide support for the rationale that your trial judge, so to speak, ruled in your favor, relied on, and I'm just amazed that you didn't do that. We did not do that with asbestos, but we also mentioned that throughout the period since 1969 when the statute was first enacted, though, that there were several changes to the regulation where certain hazards were added when they were identified by an agency, and there's a process for that to be undergone within the federal government. In this case, if the prison thought that that was a toxic chemical that could not be controlled by other means or there's no means by alleviating the smoke, then they would go to OPM, would put it out for notice and comment, and then develop a regulation. That's not the case here. The regulations are, the statute is fairly clear that it says… So you have to agree that certain substances are covered even though they're not specifically named, because they're generically described in the regulations and to an extent in the statute itself. You agree with that, don't you? Yes, with asbestos. So the fact, no, no, asbestos is different. That is named, but in the regulations many unnamed chemicals are obviously covered. Absolutely. Like the phrase toxic chemical might cover hundreds of chemicals, but none of them are individually named, but they're plainly included, right? Correct, Ron. Then why isn't secondhand smoke likewise included by some of the generic phraseology that talks about fumes? Because when OPM's understanding of the statute and the authority that they were granted to promulgate categories that were covered by 555-45 and 53-43 dealt with those chemicals where exposure could cause immediate injury. That's why when they defined hazardous duty in the CFR, they talked about an accident could cause immediate injury. For instance, and that's why any FPM supplement that was promulgated in 69 consistent with the regulations. You also have to allege physical injury then? Do you have to allege physical injury or just potential physical injury? Well, the regulations that have been promulgated so far. That's a legal question. To state a case that will be the 12B6 dismissal, what do you have to allege? You have to allege immediate injury in this case. But in this case, there's nothing in the regulation that goes directly towards secondhand smoke. Moreover, it can also be eliminated. But there are broad categories that might include it. And you say that we should defer to the OPM interpretation, which you say is in your brief because OPM signed the brief. That argument strikes me as quite untenable in a lot of the Supreme Court cases, which have made clear that litigating positions like that don't count. But in our, Your Honor, they relied upon an amicus brief by the Department of Labor. The amicus brief is different because an amicus brief has to be approved by the agency. The mere fact that the United States appears as a party and that OPM's lawyer signs the brief can't count. And, you know, there are a lot of Supreme Court cases that deal with this and that make clear that they're not going to give any deference to that kind of litigating position. But in the Cathedral Candle, the position also was articulated, the customs position was articulated in a brief as well by the United States. Well, where can you point to? Did OPM ever opine that none of the categories that it had put in its regulation included smoke? Where is that ever written down, that none of its categories included smoke? Looking at the plain language of the categories. No, but where is OPM ever so officially stated? The only thing that OPM has stated is in the FPM Supplement 990-2. When they talk about toxic chemical materials, and this was from Appendix E to that document added in 69 July, the examples they talked about were preparing toxic chemical test solution for aerosol or vapor. But my question is where did OPM ever say officially in writing that none of our broad categories in this reg could include smoke? The only place it's in writing is in our brief, absolutely. Well, you argue that OPM's interpretation of its own regulations is entitled to deference by us. But you don't point to any interpretation that OPM ever made of the pertinent language in its regulation. So there's nothing for us to defer to. It's only in the brief. As far as whether secondhand smoke is covered under the toxic chemicals. That's the only issue in the case. Their interpretation of the statute as to what hazards are covered is certainly entitled to interpretation, and that's in the regulations. The regs themselves may be entitled to Chevron deference. But you argue that in addition, their interpretation of their OPM regulations is entitled to deference. But now you're admitting there isn't any interpretation by OPM of the OPM regulations. Not in a written product. Well, what is it? In some oral product? A conversation over coffee? It's in our brief, your honor. That's not an agency adjudication or an agency policy statement. Look at U.S. against Meade. Look at Bowen. In Meade, the Supreme Court said we give near indifference to an interpretation advanced for the first time in a litigation brief. That's the situation. You're pointing to the signature of a relatively low-level lawyer for OPM co-signing your brief as a statement of OPM position. That's not the way OPM positions get stated. The head of the agency or some high-level official has to put in writing somewhere what the OPM policy or interpretation is. It can't be co-signing a brief by some fifth-level lawyer. That's absurd. That's a preposterous position. I'm very surprised you're taking that position. But in this case, though, when we look straight at the statute and you look at the language of the statute, was it an unusual physical hardship or hazard? And in this case, the trial court determined applying plain language… Let me give you a hypothetical example. Suppose you put two prisoners in a small room with you, and you're the prison guard. And you're there all day, and they're allowed to smoke all day. Now, isn't it conceivable that at some point of concentration of smoke, it becomes a health hazard for you, the guard, especially if the same thing happens the next day and the next day and the next day? It's a function of concentration, isn't it? How bad, how thick the smoke is, how rich the toxins in the air are. Absolutely. Well, then don't you need a trial in this case, or at least summary judgment based on depositions and other evidentiary materials, rather than a dismissal on the face of the pleadings, which is what, in fact, happened? No, Your Honor, because the statute specifically says, under such regulations as the office may prescribe OPM, and for such minimum periods as it determines appropriate. And in this time, when you look at the regulations, there's nothing in there that talks anything about exposure to secondhand smoke for any type of concentration. So the fact that there's nothing there, it answers Your Honor's question.  Judge Gaiarezza says there's an Eighth Amendment claim. If prisoners are exposed to secondhand smoke, what do we know about the practices in the prisons across the country? It may be that at Jessup they eliminated smoking, but what's the situation at other federal prisons? The executive order is interpreted by Judge Hewitt. Judge Hewitt's interpretation doesn't require that they eliminate, but what's actually happened? What's the practice? The practice, all I know is from Jessup, I spoke to the chief administrator yesterday, there was no smoking in Jessup, there's no tobacco products in Jessup. Why don't you ask the head of the Bureau of Prisons? If he has 800 facilities, maybe 799 of them do have smoke. That would make a big difference on the issue of whether it's unusual to expose prison guards to smoke. If at every other federal prison they are involved, are exposed to smoke, then maybe that solves the unusual problem. Seems like it would have been worth asking part of the Justice Department. That wouldn't have been the case, though, because then it wouldn't have fit under the definition promulgated by OPM in 559.02 that says hazardous duties being duty performed under circumstances in which an accident could result. If it's pervasive, it could not be. Well, that's as to one class of employees, but under the other statute, as to the remainder of the prison employees, the terminology is quite different. In other words, you can't get the dismissal of a two statute complaint because you can show that one statute might not apply. To prevail, you have to show that neither statute applies. But that's under 545. But even when you look at 553.43, that is a severe hardship. They add a severe to that statute. And when you look at the two, the category or subcategory. He's pleaded severe hardship. He even used the words unusual and severe. Now, I don't know if he can prove it or not, but under the ground rule that we have to accept his pleadings as if they're true, as if he could prove them, then why hasn't he pleaded enough? But then at that point, then you'd have to then point to regulation or some part in either Appendix A or the other appendices, 5545, Appendix A or Appendix C. How about just pointing to the statute? The unusual physical hardship. Do you think that's sufficient? Unusual physical hardship caused by the secondhand smoke and eventual physical problems that are attendant with it. What I find ironic is that we protect prisoners from secondhand smoke when we don't protect the guards. It's quite unusual. But there's nothing that says that they couldn't be protected if they actually come to OPM and ask to have a regulation promulgated to pay this differential pay and then to see first if there's any way that they can alleviate the smoke. Of course there are ways that the smoke can be alleviated. Anybody can figure that out. Maybe you only allow the prisoners to smoke outdoors in the yard. Or you only allow them to smoke in some large hall that's extra heavily ventilated. Or you enclose the guards in a glass cage that has its own air and the prisoners can smoke without bothering the guards. There are all sorts of obvious ways that the exposure can be minimized or virtually eliminated. But I don't understand why you say they have no claim because they could have gone to OPM and asked for a change in the regs. They're saying they don't need a change in the regs. They're saying they come within the regs as written now. And you're saying, no, they don't. And I'm saying, well, they pleaded the right words. And if it's true that we have to accept the pleadings as accurate, then don't they get a trial where they get a chance to prove what they allege in the complaint? And let's assume there is a trial and they present evidence that says that they were exposed to smoke during their normal tour in the prison, say, for eight hours. Then we'd have to look at the regulation to say that's been probably argued that we believe has not been promulgated by OPM and say, what's the standard to apply? Well, it includes words like unusual, severe, hardship, exposure, accident, fumes, toxic chemicals, et cetera. So either they can prove it or they can't. But this is throwing people out with no chance to produce the first word of testimony or the first sentence of written documents as evidence. But they haven't pointed. They've specifically alleged the part of the regulation that hazardous agents work with in close proximity. But they have not alleged what that exposure would be or how much exposure someone would be exposed to. But isn't that a burden of proof at trial? Don't you really need to accept that statement as being true that they were exposed at a certain level and it was hazardous? They haven't made that pleading. They have not pointed to the exposure level that mandates confiscation. Well, they use words like severe, unusual, hardship. Can't we read those in a common sense way that they're saying it wasn't just a tiny bit of smoke, it was a huge amount of smoke and we were coughing and choking all the time because of it? But then you still get that part of the statute that says as the office made requirement for such minimum periods as it determines appropriate. What does that mean? Well, that means that OPM has to, through their regulations, establish what is the time limit of the exposure, and they haven't done that. Where in the regulation has that been accomplished? I think it's the other way around. If OPM said prison guards can be exposed to one day of smoke per year without extra compensation, that might be a point in your favor. The fact that the regulations don't say anything about how many days of smoking exposure is allowed hardly proves that they don't have a case as pledged. Does it? Yes, the position of the government as of right now is there's no regulation that's been promulgated by OPM that authorizes the payment for secondhand smoke. Well, you think that's still true if we accept the assertion that secondhand smoke is a toxic chemical? Your regs do talk about toxic chemicals, right? Yes, but they still have to have a certain exposure level. Also, the regulation talks about leakage or spillage, which in this case certainly isn't leakage or spillage because under Your Honor's example, it's total exposure. It's not capable of leakage. I think I agree with you that there's no indication of leakage or spillage because it's emitted. It's pervasive. But that doesn't get around whether it's a toxic chemical. And if it is a toxic chemical, it seems to be facially covered by the reg, right? No, Your Honor. Well, don't you have to prevail by saying it's just not a toxic chemical? Once you admit it is a toxic chemical within the meaning of the regulation, it seems to me you have to admit that we better have a trial. Our position is that it's not a toxic chemical that's compensable at this stage, OPM. Well, if it is a toxic chemical, then it seems like it would be compensable. If it's not a toxic chemical, obviously not. But what's your position as to whether it's a toxic chemical or not? We agree that it's a toxic chemical. You're relying on the other language when there's a possibility of leakage or spillage. You're relying on the other part of the language in the regulation when there's a possibility of leakage or spillage, right? What is the functional effect of leakage or spillage? It's exposure. Things normally kept in a tank or a bottle get out. That creates the exposure. With smoke, they're not in a bottle to begin with, or a tank, or some other confined space. So you don't need leakage or spillage to get exposure. The exposure is there from the very start. And that's why that part of the regulation doesn't apply here. That's why they're talking about toxic chemicals, as your Honor first suggested. Leakage presupposes it starts out in a confined space. For anything not starting out in a confined space, leakage or spillage would be irrelevant. But that's what the regulation is, in effect, right now. What about the example of the garage? The mechanics in the government garage working on cars with engines running, that's not leakage or spillage. That's just normal tailpipe emissions. The longer the engine runs, the more fumes come out the back of the car. And then that would also have to entail that there is no means to alleviate that. Forget about alleviate. Under your logic, you're saying that wouldn't be covered because there's no spillage of the exhaust pipe and there's no leakage of the exhaust pipe. They're just normal exhaust pipe emissions. Therefore, that couldn't be covered, no matter how dangerous it was to those workers, no matter how unvented the garage might have been, because under your logic, there's no leakage or spillage, end of case. Right? That's your logic. It's the logic when we're dealing with this specific complaint as pled. And that is that at this time, OPM has not identified or has not promulgated regulations to determine that secondhand smoke is a toxic chemical that's compensable pursuant to the regulations it promulgated. All right. Well, I think we have your position clearly in mind. Thank you both. We'll take the case under advisement. If further briefing is required by the court, we'll notify you by fax letter. Thank you. Kindly vote.